UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK A. SHANNON, SR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16-cv-01725-WTL-DLP ) |
| RON STEGEMILLER, ROBERT TALUCCI, JIM O'QUINN, | ) ) ) ) ) |
| Defendants. | ) |

**Entry Granting Defendants' Motion for Summary Judgment in Part and Denying Defendants' Motion for Summary Judgment in Part and Directing Further Proceedings**

Presently pending before the Court is the defendants' motion for summary judgment filed on January 8, 2018. Dkt. No. 100. This motion is now fully briefed. For the reasons explained below, the defendants' motion for summary judgment is granted in part and denied in part.

## I. Introduction

Plaintiff Mark Shannon is currently incarcerated at the Bell County Forestry Camp in Pineville, Kentucky. He filed a civil rights complaint for an injury he sustained on or about July 11, 2014, while he was incarcerated at the Plainfield Correctional Facility (Plainfield). The Court screened his complaint and determined that Mr. Shannon adequately stated an Eighth Amendment claim against defendants Ron Stegemiller, Robert Talucci, and Jim O'Quinn based on the injury he sustained on July 11, 2014. Dkt. No. 26.

The defendants' motion argues that Mr. Shannon's claims are without merit and there was no constitutional deprivation. Mr. Shannon's response argues that the defendants are not entitled to summary judgment because they failed to take reasonable steps to abate a known risk of harm

and as a result he suffered a serious injury to his hand. For the reasons set forth below, the defendants' motion for summary judgment, Dkt. No. 100, is granted in part and denied in part.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Harney v. Speedway Super America, LLC.*, 526 F.3d 1099, 1104 (7th Cir. 2008). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## III. Statement of Material Facts Not in Dispute

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most

favorable to Mr. Shannon as the non-moving party with respect to the motion for summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).[1]

As an initial matter, in their reply, the defendants object to statements in Mr. Shannon's affidavit because they allegedly contradict statements Mr. Shannon made in his deposition. Dkt. No. 115. The defendants prepared a chart showing the alleged inconsistencies. *Id*. The Court does not find any material or pertinent inconsistencies in this chart. As such, the defendants' objection is overruled.

### A. The Parties:

Mr. Shannon began working in the laundry unit at Plainfield in December of 2011. Dkt. No. 101-1, p. 11. He was initially assigned as a sorter. *Id*., p. 9. As a sorter, Mr. Shannon's job duties including sorting dirty laundry. *Id*., p. 11. After a month, he was assigned as a chemical operator. *Id*., p. 9. As a chemical operator, Mr. Shannon operated the Braun 800 and 400 washing machines, loading and unloading clothes. *Id*., p. 12. He was still required to assist in sorting clothes. *Id*., p. 10. Mr. Shannon was also assigned to quality control. *Id*, p. 12. In the quality control department, Mr. Shannon ensured that all of the departments met the necessary standards. *Id.*, p. 12. Mr. Shannon worked the second shift. Dkt. No. 111-1, ¶¶ 2, 3.

Ron Stegemiller was the foreman supervisor at the Plainfield laundry unit. He was employed by Prison Enterprise Network (PEN) until January 2, 2018. PEN previously contracted with Plainfield. Dkt. No. 101-2, ¶ 1. He was a foreman for the first shift of the day. *Id*., ¶ 2.

Robert Talucci was employed as a foreman by PEN at Plainfield. He was the second shift foreman. Dkt. No. 101-3, ¶¶ 1, 2.

---

[1] While Mr. Shannon included a section in his brief in opposition labeled "statement of material facts in dispute," (Dkt. No. 111, p. 2), he does not actually dispute any of the defendants' undisputed facts.

Jim O'Quinn was employed as a driver by PEN at Plainfield. He was the acting foreman when Stegemiller and Talucci were not at work. Dkt. No. 101-4, ¶¶ 1, 2. As acting foreman, he was not permitted to alter offender work assignments. *Id.*, ¶ 9.

**B. Laundry Machine Maintenance:**

Foreman supervisor Stegemiller made requests as needed for Laundry City to inspect and repair the laundry machines during 2013 and 2014. Dkt. No. 101-2, ¶¶ 12-17.

Laundry City inspected and repaired the Braun 400 machine numerous times during 2013 and 2014, specifically on October 24, 2013, January 28, 2014, April 11, 2014, and August 12, 2014. Dkt. No. 101-2, ¶¶ 12-21. The Laundry City maintenance contractors notified Stegemiller the Braun 400 machine was operational each time they serviced it. *Id.* Specifically, on April 11, 2014, foreman supervisor Stegemiller was notified the Braun 400 machine in question was operational. Dkt. No. 101-2, ¶ 21.

**C. Interior Door Malfunction:**

Some time prior to July 11, 2014, Mr. Shannon was unloading the Braun 400 washer and the overhead door dropped and slammed on the inner cylinder door. Dkt. No. 111-1, ¶ 4. It scared Mr. Shannon. Dkt. No. 101-1, p. 15.

That day, Mr. Shannon told Stegemiller that the door had fallen and that he did not want to operate the Braun 400 washing machine. Dkt. No. 101-1, pp. 16-18. He later informed Talucci of the door falling. *Id.*, pp. 18-19. When Mr. Shannon told him about the door falling, Stegemiller replied that the door does that from time to time, and he had a pending request at that time with Laundry City to inspect and repair the Braun 400 washing machine. Dkt. No. 101-1, p. 17; Dkt. No. 111-1, ¶ 20.

On July 11, 2014, Mr. Shannon was working as a chemical operator. Dkt. No. 101-1, p. 12.

Stegemiller and Talucci were not working the second shift that day. Dkt. No. 101-2, ¶ 4; Dkt. No. 101-3, ¶ 3.). Rather, Jim O'Quinn was the foreman in charge of the second shift on July 11, 2014. Dkt. No. 101-4, ¶ 2. He asked Mr. Shannon to work on the washing machines. Mr. Shannon was "reluctant" and told O'Quinn that "[his] job was quality control." O'Quinn told him he was also assigned to work the washing machines. Dkt. No. 101-1, pp. 14-15; Dkt. No. 111-1, ¶¶ 6, 19.[2]

When Mr. Shannon was unloading the washing machine, he closed the inner cylinder door, and the outer shell door fell on his hand. Dkt. No. 101-1, p. 15; Dkt. No. 111-1, ¶ 8. Officer Pruitt helped remove the door from Mr. Shannon's hand and got him an ice pack. He also called a signal 3,000 and sent Mr. Shannon to the infirmary. Dkt. No. 101-1, p. 15; Dkt. No. 111-1, ¶ 9. Mr. Shannon's crushed hand was x-rayed twice and he underwent surgery for his injuries approximately 6 weeks after the injury occurred. Dkt. No. 101-1, p. 23; Dkt. No. 111-1, ¶ 11. Mr. Shannon was in a cast until November of 2014 and underwent physical therapy for two-and-a-half months. Dkt. No. 101, p. 25. Mr. Shannon submitted a grievance about the washing machine.

The defendants never saw the interior door fall themselves. Dkt. No. 111-2, ¶ 11; Dkt. No. 111-3, ¶ 8; Dkt. No. 111-4, ¶ 14.

### IV. Discussion

Mr. Shannon's complaint that alleges his Eighth Amendment right were violated based on the conditions of his confinement. The Court permitted the following claim against the defendants

---

[2] The defendants dispute the fact that Mr. Shannon informed O'Quinn of his reluctance to operate the Braun 400 on July 11, 2014. Dkt. No. 115, p. 5. For support they refer to Mr. Shannon's deposition testimony which states that he told O'Quinn about his reluctance prior to July 11, 2014. However, Mr. Shannon states he informed O'Quinn of his reluctance to work on the Braun 400 the day he injured his hand. Dkt. No. 101-1, pp. 15-16. Accepting the evidence in the light most favorable to Mr. Shannon, the Court interprets this testimony to be that Mr. Shannon informed O'Quinn on the day his hand was injured that he did not want to operate the Braun 400. His affidavit testimony also supports this version of events. Dkt. No. 111-1, ¶ 6.

to proceed:

> On July 11, 2014, the plaintiff alleges that he was severely injured by a Braun 400 washing machine that he was required to use as part of his prison employment. He alleges that defendants Ron Stegemiller, Robert Talucci, and Jim O'Quinn were all aware, through conversations with the plaintiff and otherwise, that the Braun 400 washing machine at issue was defective and placed the plaintiff at serious risk of physical injury, but they required the plaintiff to use the machine anyway. These allegations are sufficient to state an Eighth Amendment claim against these three defendants.
>
> The Eighth Amendment claim against Ron Stegemiller, Robert Talucci, and Jim O'Quinn shall proceed.

Dkt. No. 26, p. 2, 5. This is the only claim proceeding in this action.[3]

The defendants argue that they are entitled to judgment as a matter of law because Mr. Shannon's Eighth Amendment rights were not violated.

To prevail on an Eighth Amendment claim based on inadequate conditions, the prisoner must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted). In this context, a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"Deliberate indifference" requires a showing of the official's subjective awareness of the risk.

---

[3] Both parties include arguments in their brief relating to a claim of deliberate indifference based on the plaintiff being forced to handle soiled clothing without appropriate protective gear. Dkt. No. 101, pp. 7-9; Dkt. No. 111, pp. 3-5. However, based on the Court's screening Entry, this is not an issue in this action. The Court also gave the plaintiff time to notify the Court if it failed to identify any claims regarding the plaintiff's injuries caused by the Braun 400 washing machine that should proceed in this action. Dkt. No. 26, p. 6. The plaintiff did not notify the Court that he wanted a claim regarding soiled clothing to proceed. Therefore, the Court will not address their arguments.

*Id*. at 829. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847; *see also Borello v. Allison*, 446 F.3d 742, 749 (7th Cir. 2006). It is an adjunct to the second element of deliberate indifference noted above, requiring "a very high standard of culpability, exceeding gross negligence," *Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004). Deliberate indifference is determined through a subjective test - that is, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Therefore, the simple presence of a risk is insufficient to establish deliberate indifference where the official did not actually perceive the risk. *Id*. at 838, 847.

Mr. Shannon's claim is that the defendants subjected him to cruel and unusual punishment when they made him use the Braun 400 despite the fact they knew it had malfunctioned on at least one prior occasion. Specifically, an interior door in the machine dropped while Mr. Shannon was using the machine. Mr. Shannon reported the problem to Stegemiller and Talucci, but the problem with the door was not fixed and as a result Mr. Shannon's hand was crushed while he was using it on July 11, 2014. This version of the facts is supported by Mr. Shannon's affidavit and deposition testimony.

The defendants argue that they cannot be found deliberately indifferent because the machine was regularly serviced to keep it operating in a safe manner. Unfortunately for the defendants, the record does not foreclose Mr. Shannon's claim for relief when considered in the light most favorable to him.

The timeline here is unclear. The record shows that on an unknown date prior to July 11,

2014, the interior door fell and scared Mr. Shannon. He reported the malfunction to Stegemiller and Talucci. Stegemiller replied that the door does that from time to time and there was a service call with Laundry City pending. Laundry City made a service call on April 11, 2014. Dkt. No. 8, p. 16. Based on the quality of the invoice receipt, it is unclear what, if any, repairs were made. This is the copy of the April 11, 2014, invoice submitted by the defendants in support of their motion:

# LAUNDRY CITY EQUIPMENT

Indianapolis: 2450 Shadeland Ave. • Indianapolis, IN 46219 • (317) 783-6175 • FAX: (317) 783-6399 • 800-622-4480
Fort Wayne: 4456 Northwest Drive • Ft. Wayne, IN 46835 • (260) 486-9235
www.superlaundry.com

**S 58495**

PO # _____
COMPLETED DATE: 4/11/14

| CASH | CK# | CREDIT CARD  MC / VISA / AMEX |
|---|---|---|
| NET 30: | | EXP DATE:   CARD #: |

CUSTOMER NAME: _____
ADDRESS: MAIN RD
CITY: PLAINFIELD   STATE: IN   ZIP:
CONTACT: _____   PHONE:
WARRANTY WORK: ( ) YES   (✓) NO

**WORK REQUESTED**
- 2 CYA TROD NUMBER 1 N 400
- MADE NEW FILLING
- SM WATER PUMP LEAK EROSION

**SERVICE PERFORMED / TECH COMMENTS**
- REPAIR PUMPS ON V/C
- INSPECT 400 - FOUND ON THE LEVEL TUBE TOTALLY CLOGGED REMOVED
- THE INSPECTION AND FLUSHED TEST OIL
- INSPECT V/C WAVED DOOR LATCH AM BACK IN WORK AND IS ON
- HAND ORDER / FIX V/C -

| TYPE EQUIPMENT | MFG | MODEL | SERIAL NUMBER | AMPS | PHASE | GAS | ELECT |
|---|---|---|---|---|---|---|---|
| WASHER | RDRUN | 800 | | | | | |
| WASHER | RDRUN | 400 | | | | | |
| | | | | | | | |

| QTY | PART NUMBER | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| 1 | DTN | PIPE FITTINGS | 100 | 100 |

| DATE | TECHNICIAN | MILES | TRIP HOURS | LABOR HOURS | TIME ARRIVED | TIME DEPARTED |
|---|---|---|---|---|---|---|
| | NIC | | 1.0 | 5.7 | 9a | 745 |
| | JOSH | | 1.0 | 5.7 | | 745 |

Parts: 100
Labor: 245
Freight:
Trip Charge: 40
Sub Total:
Tax:

PAY THIS ▶ $

CUSTOMER SIGNATURE: _____

I certify that the technician(s) made the repairs and have been performed as stated and that these repairs have been made to my complete satisfaction. I hereby authorize LAUNDRY CITY EQUIPMENT, to order and install the above parts.

TERMS: 2% 10, Net 30 days from invoice date. Return checks are subject to a service charge. All non-open accounts are strictly C.O.D.

The timeline submitted by the defendants does not show that the April 1, 2014, service call was performed in response to Mr. Shannon's initial report that the door fell. The door could have fallen for the first time after the April 11, 2014, service call. Because the evidence is unclear as to when the April 11, 2014, service call occurred in relation to the door falling the first time, the defendants are not entitled to judgment as a matter of law. There is a lack of information to show that the Braun 400 was serviced in response to Mr. Shannon's initial report to Stegemiller and Talucci that the door fell. As such, defendants Stegemiller and Talucci have not shown that they took reasonable measures to avoid a substantial risk of harm that the interior door of the Braun 400 would fall again and injure an inmate. The motion for summary judgment as to defendants Stegemiller and Talucci is denied.

The undisputed evidence taken in the light most favorable to Mr. Shannon shows that he told O'Quinn on July 11, 2014, that he was reluctant to operate the Braun 400 "in that condition." Dkt. No. 101-1, p. 15-16; Dkt. No. 111-1, ¶ 6. Mr. Shannon does not identify any evidence that he told O'Quinn that the interior door fell prior to July 11, 2014, or that he told O'Quinn why he was reluctant to operate the Braun 400 on July 11, 2014. As such, there is no evidence that O'Quinn knew of the risk that the interior door posed. Because there is no evidence that O'Quinn had any knowledge that the interior door had fallen prior to the day it fell and crushed Mr. Shannon's hand, he was not deliberately indifferent to known risk. The motion for summary judgment is granted as to defendant O'Quinn.

## V. Conclusion

The defendants' motion for summary judgment, Dkt. No. 100, is **granted in part and denied in part consistent with the foregoing**.

This matter shall now proceed to settlement or trial as to defendants Stegemiller and Talucci.

**The clerk is instructed** to update the docket to reflect that Jim O'Quinn has been dismissed as a defendant from this action.

The Court will attempt to recruit counsel for Mr. Shannon. The plaintiff is instructed to complete and return a copy of the motion to assistance with recruiting counsel form to the Court by September 7, 2018. **The clerk is instructed** to include a copy of the motion to assistance with recruiting counsel form along with the plaintiff's copy of this Entry.

**IT IS SO ORDERED**.

Date: 8/8/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

MARK A. SHANNON, SR.
140469
Bell County Forestry Camp
560 Correctional Drive
Pineville, KY 40977


Jennifer Elizabeth Lemmon
INDIANA ATTORNEY GENERAL
jennifer.lemmon@atg.in.gov

Rebecca L. McClain
INDIANA ATTORNEY GENERAL
rebecca.mcclain@atg.in.gov

Magistrate Judge Doris Pryor